IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **JANE DOE,** | § | |
| | § | |
| ***Plaintiff,*** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **V.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| | § | |
| | § | |
| **OGLETHORPE UNIVERSITY** | § | |
| | § | |
| ***Defendant.*** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiff, Jane Doe (hereinafter "Plaintiff"), and files this Original Complaint (hereinafter "Complaint") and Jury Demand complaining of Oglethorpe University (hereinafter "Oglethorpe" or "Defendant University"). In support thereof, Plaintiff would respectfully show this Court the following:

### I.    PARTIES

1. Plaintiff Jane Doe[1] is a cisgender female individual, who, at the time

---

[1] Consistent with other federal courts' treatment of party names in highly sensitive cases that arise under Title IX of the Education Amendments of 1972 and involve sexual assault, *see, e.g., Doe v. Erskine College*, Case No. 8:04-23001, 2006 WL 1473853 (D.S.C. May 25, 2006), and to protect the privacy, safety, and dignity of Plaintiff and her family, Plaintiff is proceeding anonymously in this pleading. To the extent necessary, Plaintiff will seek appropriate relief from the Court to continue to proceed in this fashion and to otherwise protect her anonymity throughout the instant litigation. Fairly applying this concern, the Complaint also identifies the perpetrator of rape as "Assailant." Finally, the Complaint does not use the Plaintiff's administrators' names but identifies them as "Administrator" or by their titles as opposed to naming the staff of Defendant University.

of the sexual assault complained of herein, was a student attending Oglethorpe University.

2.      Defendant Oglethorpe University is a private educational institution with its campus located in Atlanta, Fulton County, Georgia. Oglethorpe may be served with process by serving its registered agent, Regina Mincberg, 4484 Peachtree Road NE Atlanta, Georgia 30319.

## II.     JURISDICTION AND VENUE

3.      The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since Defendant University resides or resided in this district and the events or omissions giving rise to the claim occurred in this district.

5.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within

the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

6.      Plaintiff brings this action to redress a hostile educational environment pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), as more fully set forth herein. This action is brought pursuant to 42 U.S.C. § 1983 and § 1988, and the Fourth Amendment to the United States Constitution, made applicable to Defendants through the Fourteenth Amendment to the United States Constitution.

7.      Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims arising under state law including breach of contract and negligence.

## III.    APPLICABLE LAW

8.      Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 168l(a), states that: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance .... "

9.     Title IX is implemented through the Code of Federal Regulations. See 34 C.F.R. Part 106. 19. 34 C.F.R. § 106.8(b) which provides: " ... A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part."

10.     In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational funds intentionally violates Title IX, and is subject to a private damages action, where the recipient is "deliberately indifferent" to known acts of discrimination.

11.     In *Davis v. Monroe County Board. of Education*, 526 U.S. 629 (1999), the United States Supreme Court extended the private damages action recognized in Gebser to cases where the harasser is a student, rather than a teacher. Davis held that a complainant may prevail in a private Title IX damages action against a school district in cases of student-on-student harassment where the funding recipient is: a) "deliberately indifferent to sexual harassment of which the recipient has actual knowledge," and b) "the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the

educational opportunities or benefits provided by the school." *Davis*, 526 U.S. at 1669-76.

12.     Title IX jurisprudence as well as Department of Education regulations have long recognized that a single event of rape constitutes harassment so severe, pervasive and objectively offensive that it deprives its victims of access to the educational opportunities provided by the school: "The more severe the conduct, the less need there is to show a repetitive series of incidents to prove a hostile environment, particularly if the harassment is physical. Indeed, a single or isolated incident of sexual harassment may create a hostile environment if the incident is sufficiently severe. For instance, a single instance of rape is sufficiently severe to create a hostile environment." U.S. Department of Education, Office of Civil Rights, "Dear Colleague" Letter of April 4, 2011.

13.     Regardless, in the circumstances giving rise to the claims of this Plaintiff, and others, a history of student harassment and assault, resulting from deliberate indifference, has been allowed to continue at the Defendant University for many years.

14.     Georgia law provides protections for students and requires the exercise of reasonable care on the part of the University.

15.    Georgia law provides for the protection of invitees from foreseeable criminal harm.

16.    Georgia law also provides for a cause of action of breach of contract. Plaintiff has an educational contract with the Defendant University that included agreements and duties to provide adequately for their safety, to adequately and in compliance with law report instance of sexual assault and/or harassment the breach of which cause the damages claimed herein.

## IV.    GENERAL ALLEGATIONS

17.    At all relevant times, Oglethorpe received federal funding for its academic programs and activities and was subject to the requirements of Title IX of the Education Amendments of 1972, 20 U.S.C. 1681(a) (hereinafter, "Title IX").

18.    The Defendant University implemented and executed policies and customs in regard to the events that resulted in the deprivation of Plaintiff's constitutional, statutory, and common-law rights.

19.    The Defendant University received reports from Plaintiff concerning the rape she experienced while at the Defendant University.

20.    The Defendant University failed to promptly and adequately investigate the event Plaintiff reported in violation of Title IX.

21.     The Defendant University failed to adequately investigate the assault Plaintiff endured of which Defendant had either actual or constructive notice.

22.     Upon information and belief, the Defendant University failed to report the criminal acts involved in the reports it received from Plaintiff in violation of its obligations under the Clergy Act.

23.     At all times relevant to this Complaint, Defendant failed to protect Plaintiff, and others from sexual assault on campus.

24.     Plaintiff was a student at Oglethorpe starting in 2017. Upon her arrival at Oglethorpe, Plaintiff became acquainted with her assailant, an Oglethorpe track and field athlete (hereinafter "Assailant").

25.     Upon information and belief, Assailant transferred to Oglethorpe from another university under suspicious circumstances, namely being that he exited his previous university after a Title IX investigation against him for sexual assault of a female student.

26.     Upon information and belief, Oglethorpe was aware or reasonably should have been aware of Assailant's history as a sexual predator prior to his arrival on Oglethorpe's campus and yet Oglethorpe chose to still accept him into its program and allowed him to prey on vulnerable female students.

27.    In April of 2019, Plaintiff was raped by Assailant. She promptly and bravely reported her assault to Oglethorpe in May 2019, just a few days later.

28.    Plaintiff's sexual assault, like countless others, occurred during what has become known as a time of indifference by universities and Title IX officials in response to reports of assault. This has proven especially true where the rape is perpetuated by an athlete during a time of growth for the program.

29.    Upon information and belief, Assailant had sexually assaulted other female students at Oglethorpe prior to Plaintiff's incident and Oglethorpe was aware of these prior incidents. The occurrence of Assailant sexually assaulting female students at Oglethorpe was so frequent that Oglethorpe had its own Title IX investigation dedicated just for him.

30.    Additionally, Plaintiff's sexual assault, like countless others, resulted in a startling absence of consequences and/or inadequate consequences to her assailant, and little to no comfort or support to Plaintiff.

31.    Prior to Plaintiff's arrival at Oglethorpe, Oglethorpe officials permitted a campus condition rife with sexual assault and completely lacking the basic standards of support for victims as required by federal and state law. This case arises from Oglethorpe's deliberately indifferent response to Plaintiff's report of student-on-student sexual assault.

32.    As a direct and proximate result of the harassing educational environment created by Oglethorpe's deliberately indifferent response to the sexual assault and subsequent harassment of Plaintiff, as well as violations of her state and federal legal rights, Plaintiff has suffered and continues to suffer untold psychological damage, profound emotional distress, permanent loss of standing in her community and damage to her reputations, and her future relationships have been negatively affected.

33.    Plaintiff has also been deprived of a normal college education due to Oglethorpe's conduct and the resulting educational environment which Oglethorpe caused.

34.    Plaintiff has also been damaged by missed educational opportunities.

35.    Moreover, Oglethorpe's failure to promptly and appropriately investigate and respond to assaults such as Plaintiff's furthers sexual harassment and a hostile environment and perpetuates the rape culture which resulted in Plaintiff's pain, anguish, and damages.

36.    Oglethorpe's failure to promptly and appropriately investigate and respond to Plaintiff's specific report resulted in damages to Plaintiff, including mental and physical pain and anguish, past and future.

37.   Finally, Oglethorpe's failures to promptly and appropriately administer its own Title IX procedures effectively denied Plaintiff, and other female students, access to educational opportunities. Plaintiff brings this action to redress a hostile educational environment pursuant to Title IX.

38.   Further, Oglethorpe's lack of any kind of sufficient disciplinary action against a track and field athlete in the wake of a credible report of assault belies Oglethorpe officials' priorities in investigating instances of sexual assault on Oglethorpe's campus.

## V.   OGLETHORPE'S HISTORY OF SEXUAL VIOLENCE ON CAMPUS

39.   College campuses in general are no strangers to sexual violence, especially towards females, and Oglethorpe is no exception. Oglethorpe has a history of mishandling sexual assault complaints so much so that it prompted an investigation by the U.S. Department of Education in 2015. The Complainant alleged that the University engaged in discrimination on the basis of sex against said Complainant when it failed to respond to a notice of student-on-student sexual violence in a prompt and equitable manner. According to a federal database, Oglethorpe had one sexual assault reported in 2012 and another sexual assault reported in 2013.

40.    At the time of the investigation in 2015, Oglethorpe stated that it "…takes all  complaints of sexual misconduct seriously, is dedicated to complying with Title IX and is deeply committed to ensuring the safety and well-being of its students and the entire University community." Those words ring hollow in the face of Plaintiff's recent sexual assault and other students' sexual assaults since the University released that statement.

41.    A disturbing thirty-four (34) minute video by a sexual assault survivor entitled "Oglethorpe University is not Safe" surfaced on YouTube in July 2019, outlining just how insidious and dismissive Oglethorpe is towards sexual assault survivors. The video named certain Deans of the University who were particularly awful. Rather than punish students who do bad things, these Deans will punish students who *report* bad things, intimidating them into silence. As the video says, "…that is the scariest part of this." According to the video, victim blaming is pervasive by Oglethorpe in an attempt to bury the complaints and bury the problems.

42.    In addition to the video, there is an Instagram account entitled "The Other Petrels" (handle is @theotherpetrels) set up by students at Oglethorpe who have been oppressed by Oglethorpe, particularly sexual assault survivors. These accounts paint a disturbing pattern of sexual assault at Oglethorpe as well as a

disturbing pattern of gross mishandling of these sexual assault complaints by Oglethorpe and/or zero acknowledgement or help at all by Oglethorpe. **There are over 35 different accounts of rape and accounts of Oglethorpe's mishandling of that rape detailed on just this one Instagram page.** A few of the accounts are listed below:



 **theotherpetrels**   · · ·

"I was assaulted by a fellow student as were many other girls in my year. We have all submitted complaints and some have taken it further. It has taken almost a year and no one has gotten justice or heard anything. Meanwhile, he's having a great time and I can't even demand they keep him out of my classes. He has to decide to do that."

@TheOther Petrels

**theotherpetrels**   · · ·

I remember when my friend shared her assault with the administration and I asked Brookhaven PD who were there for the case how they felt about our school and the way admin handled assault and an officer openly admitted Oglethorpe was one of the worst schools in Georgia for handling sexual assault charges. The aftermath of that meeting was her rapist walked free with and she transferred.

@theotherpetrels



43.    Upon information and belief, Plaintiff's orientation leader described another prior incident of sexual assault at Oglethorpe prior to 2017, where the orientation leader said that the assailant was allowed to remain on campus even after the school became aware of the rape. The assailant was expelled from campus *only after* multiple protests and outrage from students.

44.     Colleges also have a notorious reputation for protecting their athletes from accusations of sexual assault and from consequences that flow from those accusations, often handing down lighter than normal sanctions that do not result in expulsion or removal from campus. This failure to remove the assailants from campus means that the sexual assault survivors are forced to see their attackers and come into contact with their attackers on a regular basis which results in re-victimization and trauma.

45.     According to the Rape, Abuse & Incest National Network, sexual violence on campus is pervasive.

- 13% of all students experience rape or sexual assault through physical force, violence, or incapacitation (among all graduate and undergraduate students).[2]

- Among graduate and professional students, 9.7% of females and 2.5% of males experience rape or sexual assault through physical force, violence, or incapacitation.[3]

- Among undergraduate students, 26.4% of females and 6.8% of males experience rape or sexual assault through physical force, violence, or incapacitation.[4]

---

[2] David Cantor, Bonnie Fisher, Susan Chibnall, Reanna Townsend, et. al. Association of American Universities (AAU), Report on the AAU Campus Climate Survey on Sexual Assault and Sexual Misconduct (January 17, 2020). ("Victim services agency" is defined in this study as a "public or privately funded organization that provides victims with support and services to aid their recovery, offer protection, guide them through the criminal justice process, and assist with obtaining restitution."
[3] Id.
[4] Id.

46.     This history of sexual violence at Oglethorpe and Oglethorpe's history of inadequate response and/or no response even with the knowledge of the prevalence of sexual assault on its campus and on college campuses in general has led to a sexually hostile culture on campus that allowed Plaintiff's rape to occur.

## VI.   PLAINTIFF'S RAPE AND SUBSEQUENT REPORT

47.     On the night of Saturday, April 28, 2019, Plaintiff and Assailant agreed to attend an initiation for a sorority together. Prior to the initiation party, Plaintiff and Assailant decided to hang out in Assailant's dorm room on campus.

48.     Shortly after Assailant and Plaintiff arrived at Assailant's dorm room, Plaintiff and Assailant sat down on Assailant's chair together and Assailant started making sexual advances towards Plaintiff, pressuring her to have sex.

49.     Plaintiff firmly and clearly stated to Assailant "NO" and said that she did not want to have sex with Assailant and clearly stated that she could **not** have sex with Assailant. Despite Plaintiff's wishes, Assailant became more aggressive towards Plaintiff and continued to pressure Plaintiff for sex, ignoring Plaintiff's clearly nonconsensual statements. Plaintiff pulled away from Assailant at this point and backed away.

50.     Plaintiff again clearly and explicitly told Assailant she did not want to have sexual intercourse with Assailant. Plaintiff was in fear for her life as Assailant was an experienced and conditioned athlete as a track and field star for Oglethorpe.

51.     Plaintiff sat down on Assailant's bed to compose herself. Assailant came over to the bed and got on top of Plaintiff. At this point, Plaintiff froze with fear and shock as Assailant got on top of her and raped her.

52.     After the rape, Assailant forced Plaintiff to delete the sexually explicit text messages which Assailant had sent to Plaintiff, knowing that they could possibly implicate him down the road. Assailant also called Plaintiff to notify her that his ex-girlfriend had found out about the incident. Assailant offered no apology or explanation to Plaintiff after raping her. Nothing. All Assailant thought about was himself.

53.     Following the sexual assault, Plaintiff called her friend to tell her what had happened with Assailant. This friend told Plaintiff that she needed to speak immediately with another female student who had also been raped by Assailant within days of one other. This other female student told Plaintiff that she had reported Assailant to the Title IX office at the University. This other female student also told Plaintiff that there was a third woman who Assailant had raped on campus. Assailant had threatened this third woman into silence, allegedly

confronting her at a volleyball practice and preventing her from making a report to the University. Assailant got so aggressive towards this third woman when he confronted her that a student coach at the time had to intervene to protect the woman from harm.

54.     Following the sexual assault, Plaintiff did not want another student such as herself to be raped by Assailant. Plaintiff voluntarily reached out to the Title IX office to bravely report her assault on or around May 2, 2019.

55.     Following the submission of Plaintiff's written statement reporting her assault, Oglethorpe mishandled and delayed the administration of the Title IX investigation, offering Plaintiff virtually no support, resources or protection during the investigation.

## VII.   OGLETHORPE SUBJECTS PLAINTIFF TO A CONTINUING HOSTILE ENVIRONMENT

56.     Following the April 2019 sexual assault, Plaintiff continued to feel the sexually hostile effects of Oglethorpe's policies, or lack of administration thereof, during her time at Oglethorpe.

57.     Plaintiff was forced to face Assailant around campus, as Oglethorpe failed to remove Plaintiff's rapist from its institution and/or offer Plaintiff any sort of protection.

58.     The result of Oglethorpe's continued sexually hostile and discriminatory policies combined with Plaintiff being required to see her rapist on campus created a highly hostile educational environment for Plaintiff on a daily basis.

59.     Throughout this entire period of time, Oglethorpe was clearly on notice of a report that one of their female students, Plaintiff, was raped by an Oglethorpe track and field athlete. To make matters worse, Oglethorpe was also aware of a report of *another* female student who had been raped by Assailant prior to Plaintiff's incident. And yet Assailant remained on campus with no restrictions, endangering Plaintiff's and other women's safety in the interim.

60.     As a result, Oglethorpe had control over both the offender and had the ability to address its effects and prevent a rape recurrence. Yet, Oglethorpe continued to allow the assailant to roam free on campus with little to no protection for Plaintiff.

### VIII.  OGLETHORPE'S RESPONSE AND POLICIES

#### A.     Oglethorpe's Response.

61.     Despite the federal government's recommendation that investigations resolve within 60 days, Plaintiff's investigation extended this time period by over a month, lasting in total over 90 days. Given that Plaintiff had little to no

involvement nor any information throughout the process, the Title IX process should never have taken this long.

62.    Further, and even more notably, the perpetrator was not pulled off the roster or pulled off the track and field team while the investigation was pending. This leads to an inference that Oglethorpe deliberately extended the investigation to avoid the risk of Plaintiff going public with her report. Finally, it leads to an inference that the report was not communicated or reported in any way to the Athletics program which Plaintiff's assailant was involved in as an Oglethorpe track and field athlete.

63.    Plaintiff finally received the decision from Oglethorpe regarding her report of rape and sexual assault on August 6, 2019. Oglethorpe found Assailant responsible for Sexual Assault and Sexual Harassment. However, most surprisingly, Oglethorpe did not find Assailant responsible for Rape.

64.    The sanctions that Oglethorpe issued to Assailant after the first decision for a harrowing incident of sexual assault and sexual harassment were nothing more than a slap on the wrist. Assailant was allowed to remain on campus. The school did not even offer a no-contact order to Plaintiff.

65.    Assailant then appealed the decision. Plaintiff had to go through another hearing. The Title IX office lost the recorded audio file from the first

investigative hearing and decided to blame the misplacement of the audio file on a "power surge". The second decision from the University after the appeal again found Assailant responsible for Sexual Assault and Sexual Harassment but not Rape. This time around, the sanctions were even less severe. The school allowed Assailant to sign up for the same classes as Plaintiff. Assailant was also allowed to remain on campus. Plaintiff had to take it upon herself to go to the Associate Dean of Students, set up an appointment with the Dean, and ensure that she had no classes with the Assailant.

66.    Plaintiff appealed both decisions saying that the punishment was not severe enough. However, Plaintiff's appeals fell on deaf ears. The University did not care.

67.    Oglethorpe's response, or lack thereof, to Plaintiff's rape is unconscionable. In sum, Oglethorpe declined to take any sufficient action in the wake of Plaintiff's report of rape.

68.    Thus, Oglethorpe's own response established that it did not adhere to or administer Title IX policies appropriately, and further, that the policies as set forth below perpetuated a rape culture and caused and exacerbated Plaintiff's damages.

**B.    Oglethorpe's Policies.**

69.     In addition to violating Oglethorpe's own Title IX policies, Oglethorpe further demonstrated the following policies which are not in keeping with federal law, and which served to exacerbate Plaintiff's rape and cause her additional damages.

**C.     Policy of No or Little Discipline.**

70.     Despite Plaintiff's credible report of rape, Oglethorpe initially chose not to suspend, remove or expel the Assailant from campus. Oglethorpe also allowed Assailant to sign up for the same classes as Plaintiff.

**D.     Policy of Inadequate Education of Staff/Students.**

71.     Oglethorpe failed to adequately train students and staff about Title IX. Plaintiff and likely other women on campus are unaware of what resources were available to them and were/unaware of Title IX or how Oglethorpe's Title IX office could help. Oglethorpe provided no security or protection to Plaintiff after she reported her rape. Oglethorpe failed to provide a no-contact order to Plaintiff as an option after she reported her rape. As far as the mishandling and inadequate response to Plaintiff's credible report of rape with no removal of Assailant, it leads to the conclusion that Oglethorpe wholly failed to train responsible employees under Title IX.

## X.     <u>OGLETHORPE'S DUTIES</u>

72.     As a University seeking to educate students and profit from that relationship, Oglethorpe owed Plaintiff a duty of reasonable care. Reasonable care is the degree of caution and concern for the safety of students that an ordinarily prudent and rational University may apply in the same circumstances. Sadly, universities seek to evade this standard rather than adhere to any degree of reasonableness when it comes to the safety of students.

73.     More specifically, Oglethorpe had a duty to act as a reasonable university and apply a reasonable degree of care in hiring, training, and supervising employees and faculty that interact with students throughout the Title IX process; and/or that apply and enact the University's own policies and procedures.

74.     Finally, Oglethorpe possessed superior knowledge of the risks to Plaintiff, and had the ability to control its employees (who tolerated Plaintiff's sexual assault by an athlete) and the Assailant (who could have been more adequately disciplined under Oglethorpe's sexual misconduct policies).

75.      In sum, Oglethorpe can and did have a duty to Plaintiff, as well as other students, outside of the existence of a "special relationship." Plaintiff can establish duties owed, as well as violations of said duties, which are not dependent on the existence of a special relationship.

76.     Oglethorpe breached its duties to Plaintiff in multiple ways, including by:

a.      Failing to properly and/or adequately hire, train, and supervise employees and faculty as to proper methods of dealing with reports of sexual abuse, and investigate same and accommodate victims in a manner that would permit them without undue hindrance, to complete their higher education;

b.      Failing to properly and timely report incidents or claims of sexual assault;

c.      Failing to provide adequate counseling and assistance to victims of sexual assault;

d.      Failing to adequately monitor and supervise departments, including athletic departments, to ensure compliance with protections and standards for sexual assault prevention, reporting, and investigation;

e.      Failing to discover, develop, and/or implement basic safeguards designed to prevent and/or minimize incidents of sexual assault;

f.      Failing to investigate and/or monitor persons accused of sexual assault to ensure additional events and/or harassment of victims did not occur;

g.      Failing to adopt and implement adequate safeguards to prevent known sexual harassment occurring on campus;

h.      Failing to provide adequate staff, with proper training, to counsel and assist victims of sexual assault;

i.      Tolerating sexual assailants on campus despite reports to the highest levels of their identities; and despite reports that they continue to bully and/or harass their victims online and/or in person;

j.    Failing to adopt education programs to promote awareness of rape, acquaintance rape, and other sex crimes;

k.    Failing to adopt and enforce institutional sanctions for sex offenses, both forcible and non-forcible;

l.    Failing to adopt and enforce procedures students should follow if they become sexual assault victims, including who should be contacted, the importance of retaining evidence, and to whom the offense should be reported;

m.    Failing to notify sexual assault victims about counseling services and options for changing academic schedules and living arrangements in the wake of a sexual assault;

n.    Failing to put in place an accurate routine procedure to notify the campus community about serious criminal activity that is likely to be a threat to students and employees;

o.    Failing to adopt and periodically review procedures to make sure they are adequate to address complaints of serious sexual misconduct;

p.    Failing to develop a clear policy about which kinds of sexual offenses will be handled internally and which will be turned over to the criminal authorities; and

q.    Failing to make the goal of protecting the campus community from sexual assaults and harassment an integral part of the institution's day-to-day mission.

77.    The above breaches of Defendant Oglethorpe's duties of reasonable care, which flow to all students including Plaintiff, were the proximate cause of substantial injury and damage to Plaintiff, as more specifically described herein.

78.    These damages include, without limitation, great pain of body and mind, physical injury, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; which Plaintiff has suffered and continues to suffer spiritually. Plaintiff was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## XI.    CAUSES OF ACTION

**A.    COUNT 1: DISCRIMINATION UNDER TITLE IX: SEXUALLY HOSTILE CULTURE (Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a))**

79.    Plaintiff incorporates by reference all preceding facts and allegations set forth above in Paragraphs 1 through 78.

80.    Oglethorpe was deliberately indifferent to a culture of sexual hostility and violence instituting and/or mis-administering the policies cited herein, including without limitation:

• Violating its own policies set forth under Title IX;

• Policy of no or little discipline;

• Policy of interference with female students' access to help;

• Policy of not educating staff/students.

81.    Oglethorpe's sexually hostile policies and practices were a proximate cause of Plaintiff being subjected to multiple semesters of sexual harassment in the form of (1) a hostile educational environment, and (2) ongoing pain, mental anguish, and harassment by forcing her to interact with her assailant.

82.    The mental pain and anguish that Plaintiff suffered was so severe, pervasive, and objectively offensive that it effectively barred her access to educational opportunities and benefits.

83.    As a direct and proximate result of Oglethorpe's creation of and deliberate indifference to its sexually hostile educational environment, Plaintiff suffered damages and injuries for which Oglethorpe is liable.

**B.    COUNT 2: GENDER DISCRIMINATION UNDER TITLE IX: DELIBERATE INDIFFERENCE TO PLAINTIFF'S RAPE (Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a))**

84.    Plaintiff incorporates by reference all preceding facts and allegations set forth above in Paragraphs 1 through 83.

85.    Oglethorpe was on notice and aware of Plaintiff's rape as well as the identity of the student-athlete assailant at numerous points in time.

86.     Oglethorpe deliberately chose not to remove the assailant from campus, even after the rape of Plaintiff and her subsequent report.

87.     Such failure to adequately discipline the assailant was clearly unreasonable.

88.     Oglethorpe's deliberate indifference to Plaintiff's rape exposed her to continued mental pain and anguish and sexual harassment which was so severe, pervasive, and objectively offensive that it effectively barred her access to meaningful educational opportunities and benefits including academics, athletic programs, and on-campus events and activities.

89.     As a direct and proximate result of Olgethorpe's deliberate indifference to Plaintiff's rape, Plaintiff suffered damages and injuries for which Oglethorpe is liable.

## C.     COUNT 3: GEORGIA TORT LAW – NEGLIGENCE

90.     Oglethorpe owed Plaintiff a duty of reasonable care. Oglethorpe breached their duty in multiple ways including:

a.  Failing to proper hire, train and retain officers, staff and faculty as to proper methods to deal with reports of sexual abuse, investigate same and accommodate victims in a manner that would permit them to without undue hindrance, and complete their higher education;

b. Failing to properly and timely report incidents of sexual assault;

c. Failing to provide adequate counseling and assistance to victims of sexual assault;

d. Failing to adequately monitor and supervise departments, including athletic departments, to ensure compliance with protections and standards for sexual assault prevention, reporting and investigation;

e. Failing to discover, develop and/or implement basic safeguards designed to prevent and/or minimize incidents of sexual assault;

f. Failing to investigate and/or monitor persons accused of sexual assault to ensure additional events did not occur;

g. Failing to adopt and implement adequate safeguards to prevent known sexual harassment occurring on campus;

h. Failing to provide adequate staff, with proper training, to counsel and assist victims of sexual assault;

i. Tolerating sexual assailants on campus despite reports to the highest levels of their identities;

j. Failing to adopt education programs to promote awareness of rape, acquaintance rape, and other sex crimes;

k. Failing to adopt and enforce institutional sanctions for sex offenses, both forcible and non-forcible;

l. Failing to adopt and enforce procedures students should follow if they become sexual assault victims, including who should be contacted, the importance of retaining evidence, and to whom the offense should be reported;

m. Failing to notify sexual assault victims about counseling services and options for changing academic schedules and living arrangements in the wake of a sexual assault and address or protect against retaliation in the wake of reporting a sexual assault;

n. Failing to put in place an accurate routine procedure to notify the campus community about serious criminal activity that is likely to be a threat to students and employees;

o. Failing to adopt and periodically review procedures to make sure they are adequate to address complaints of serious sexual misconduct.

p. Failing to develop a clear policy about which kinds of sexual offenses will be handled internally and which will be turned over to the criminal authorities; and

q. Failing to make the goal of protecting the campus community from sexual assaults and harassment an integral part of the institution's day-to-day mission of providing a safe and secure learning and working environment.

91.    The above enumerated breaches of duties were the proximate cause of substantial injury and damage to Plaintiff, as more specifically described herein.

92.    These damages include, without limitation, great pain of mind and body, physical injury, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; which Plaintiff has suffered and continues to suffer spiritually. Plaintiff was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## D.      COUNT 3: GEORGIA LAW – BREACH OF CONTRACT

100.   Plaintiff had a valid, enforceable contract with Oglethorpe as an academic enrollee, and also as a resident living in on-campus housing.

101.   Oglethorpe breached this contract in failing to adequately warn Plaintiff of the dangerous sexual assault conditions on campus that have been allowed to metastasize in light of inadequate investigation procedures and student support activities.

102.   Oglethorpe also breached this contract by failing to provide an adequately safe living and educational environment for Plaintiff, and by failing to maintain an adequately safe living and educational environment for Plaintiff after her reported rape.

103.   As a result of these breaches of contract, Plaintiff suffered damages which were foreseeable, and for which recovery is now requested.

## XIII.  ATTORNEYS FEES

104.   As a result of this action, Plaintiff has retained the undersigned to represent her in her claims against Oglethorpe. Accordingly, Plaintiff seeks attorneys' fees incurred pursuant to Title IX.

105.   Plaintiff thus requests award of reasonable and necessary attorneys' fees for this action. See, e.g., 42 U.S.C. §§ 1983 & 1988. Plaintiff also requests reasonable and necessary attorneys' fees for her breach of contract claim.

## XIV.  JURY DEMAND

106.   Plaintiff made a good faith effort to resolve this matter prior to the filing of this lawsuit. Plaintiff asserts her right under the Seventh Amendment to the U.S. Constitution and in accordance with Federal Rule of Civil Procedure 38, respectfully demands a jury trial on all issues.

## XV.   RELIEF REQUESTED

107.   For the foregoing reasons, Plaintiff respectfully requests that the Court enter judgment against Defendant Oglethorpe consistent with the relief requested herein, and for any and all other relief to which Plaintiff may be justly entitled including actual damages, compensatory damages, nominal damages, punitive damages, court and litigation costs, expert fees, attorneys' fees, statutory interest, and pre- and post-judgment interest.

Respectfully submitted,

*/s/ Quynh-Huong "Betty" Nguyen Davis*
Quynh-Huong "Betty" Nguyen Davis
Georgia Bar No:  141293
THE DAVIS INJURY FIRM LLC
55 Ivan Allen, Jr. Blvd. NW, Suite 700
Atlanta, GA 30308
Telephone: (404) 593-2620
Facsimile: (678) 253-0237
Email: betty@bettydavislaw.com

Anthony G. Buzbee
(Texas Bar No. 24001820)*
Cornelia Brandfield-Harvey
(Texas Bar No. 24103540)*
THE BUZBEE LAW FIRM
600 Travis Street, Suite 7300
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909
Email: tbuzbee@txattorneys.com
Email: cbrandfieldharvey@txattorneys.com

*(Motions for pro hac vice forthcoming)*

*Counsel for Plaintiff*